NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0310n.06

Nos. 19-3537/20-3252

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

BELKIS WALESKA COREA ESCOTO; HECTOR
ADONYS MUNOZ COREA,

      Petitioners,

v.

MERRICK B. GARLAND, Attorney General,

      Respondent.

)
)
)
)
)
)
)
)
)
)
)
)

**FILED**
Jul 02, 2021
DEBORAH S. HUNT, Clerk

ON PETITION FOR REVIEW
FROM THE UNITED STATES
BOARD OF IMMIGRATION
APPEALS

Before:  STRANCH, BUSH, and LARSEN, Circuit Judges.

LARSEN, Circuit Judge.  The Department of Homeland Security (DHS) initiated removal proceedings against Belkis Waleska Corea Escoto and her son.[1]  Corea then applied for asylum on behalf of herself and her son, and withholding of removal and protection under the Convention Against Torture (CAT) for herself.  The immigration judge (IJ) and the Board of Immigration Appeals (BIA) denied relief and ordered Corea and her son removed to Honduras.  Corea also sought administrative closure of her proceedings, or at least a continuance of them, until her pending application for a U visa was resolved.  The IJ and BIA denied her requests.  Corea timely petitioned for review (Docket No. 19-3537).  While her petition was pending in this court, Corea sought reconsideration of the BIA's decision.  The BIA denied her motion for reconsideration, and

---

[1] Petitioner refers to herself as "Corea" in her briefing, so we do the same.  While Corea's youngest son is also a party to this proceeding, we do not address his case separately because his case is derivative of Corea's.

she petitioned for review (Docket No. 20-3252). We consolidated the petitions. For the reasons stated, we GRANT in part and DENY in part Corea's petition in Docket No. 19-3537 and DISMISS in part and DENY in part Corea's petition in Docket No. 20-3252. We REMAND to the BIA for further proceedings.

I.

Corea is a native and citizen of Honduras. She has three minor children who are also Honduran natives and citizens. We refer to the children as L., A., and H. Corea also has a son born in the United States after the conclusion of her removal proceedings before the IJ; this son is a United States citizen.

In early 2016, Corea fled Honduras with her youngest Honduran-born son, H., and entered the United States without authorization. DHS later initiated removal proceedings against Corea and H., filing Notices to Appear that alleged that Corea and H. were removable under 8 U.S.C. § 1182(a)(7)(A)(i)(I) as aliens who, "at the time of application for admission, [were] not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the [Immigration and Nationality] Act."

Before the IJ, Corea conceded removability but sought asylum, withholding of removal, and protection under the CAT. Her application alleged that, while in Honduras, she had been threatened and extorted by a man named El Pollo, who approached her while she was selling candy by her house; claiming that he was "the one who collects the rent," El Pollo demanded 5,000 lempiras per month. Because of this threat, Corea quit her business selling candy and fled to the United States with H. She said that she was scared to go back because "[i]f they find me, they would kill me because they are mad I escaped them. They would be mad because I left instead of paying; or they would kill me because I can't pay." She also alleged:

> On December 22, 2008, when I was about 6 months pregnant with my middle child, [A.], his father was murdered by members of MS[-13]. He was a taxi driver, which was a really dangerous job during this time because of gang problems. . . . After my partner was murdered, his cousin's friend said that the men who killed him were looking for me because I was "his woman" and I was pregnant with his child.

Finally, Corea alleged that her stepfather, "who was a member of the national police force in Honduras, was assassinated by MS[-13] in 2006," about six months after he had been released from jail, "where he had been for two years because of an assault he was alleged to have committed with a group of other people." Corea asserted, "I know that the men who were involved with my step-father's death are the same ones who work with El Pollo because I recognize them from back then. They know who I am, and they know about my step-father."

Before Corea had a hearing on her applications, she moved to administratively close the removal proceedings while she applied for a "U visa," pursuant to 8 U.S.C. § 1101(a)(15)(U). U visas are "set aside for victims of certain crimes who have suffered mental or physical abuse and are helpful to law enforcement or government officials in the investigation or prosecution of criminal activity." *Victims of Criminal Activity: U Nonimmigrant Status*, U.S. Citizenship and Immigration Services, https://www.uscis.gov/humanitarian/victims-of-human-trafficking-and-other-crimes/victims-of-criminal-activity-u-nonimmigrant-status (last visited June 30, 2021). Corea sought U visa status for herself and her children based on alleged abuse suffered at the hands of H.'s father, Hector Munoz. Corea had been living in the Memphis, Tennessee area with Munoz, who had become physically abusive and controlling. Corea told the Memphis police that Munoz had "pulled her to the ground by her hair and threatened to take her son." After this incident, Corea moved out of the home with her children and obtained a protective order against Munoz. Corea said that the Memphis police "certified [her] as a victim of domestic violence who cooperated in the investigation." Corea asserted that administrative closure of her removal proceedings was

appropriate because if she obtained lawful status through a U visa, she could request termination of the removal proceedings.

The Attorney General opposed administrative closure, arguing that Corea would not be prejudiced by moving forward with the removal proceedings because she could "seek U Visa status before [the U.S. Citizenship and Immigration Services (USCIS)] *even if* she is subject to a final order of removal, or if she is outside of the United States." And, according to the Attorney General, "In the event a removal order is entered against [Corea], she may request a stay of removal with USCIS . . . , and if her U visa application is granted, she will attain lawful status that will allow her to remain in the United States." Corea did not dispute either point. The case was then assigned to a new IJ, who denied Corea's motion for administrative closure, stating that she "agree[d] with the reasons stated in the opposition to the motion."

The new IJ then held a hearing on the merits of Corea's applications. Corea was the only witness. She elaborated on the allegations in her applications. At the end of the hearing, Corea renewed her motion for administrative closure, and the Attorney General again opposed the motion. The IJ reserved her decision.

The IJ denied Corea's applications for relief. With respect to the claims for asylum and withholding of removal, the IJ concluded that Corea could not establish a well-founded fear of future persecution. The IJ determined that Corea could not show that the government was unable or unwilling to assist her. She also concluded that Corea's claims of fear were not objectively reasonable and that she had failed to establish a nexus between the alleged future persecution and a protected ground. The IJ also determined that Corea was not eligible for CAT protection because she made no claim that the police or a government official would be involved in any harm that

might come to her.  As a result, the IJ denied Corea's requests for relief and ordered her removed to Honduras.  The IJ did not address Corea's renewed motion for administrative closure.

Corea appealed to the BIA, which affirmed the IJ's decisions in all respects.  The BIA also addressed Corea's argument that the proceedings should have been continued or administratively closed.  The BIA acknowledged *Matter of Castro-Tum*, 27 I. & N. Dec. 271, 272 (A.G. 2018), which was issued after the IJ's decision in this case.  *Castro-Tum* held that "Immigration Judges and the Board may only administratively close a case where a previous regulation or a previously judicially approved settlement expressly authorizes such an action."  Because Corea's case did not fall within either category, the BIA determined that Corea's case could not be administratively closed.  The BIA also determined that Corea had not shown "good cause" for a continuance because she had "not established prima facie eligibility for a U-visa, a pending application for a collateral matter not within the Immigration Judge's jurisdiction, or established that the collateral matter would materially affect the outcome of the removal proceedings."  As a result, the BIA dismissed Corea's appeal and denied her motion for remand.  Corea timely petitioned for review of the BIA's decision (Docket No. 19-3537).

While her petition was pending in this court, Corea filed a motion for reconsideration with the BIA, challenging the BIA's conclusions regarding her requests for a continuance and administrative closure.  The BIA denied reconsideration.  Corea petitioned for review of that decision (Docket No. 20-3252), and we consolidated the petition with the one she had previously filed.  We resolve both matters now.

## II.  Docket No. 19-3537

"Where, as here, the BIA issued a separate opinion, rather than summarily affirming the IJ's decision, we review the BIA's decision as the final agency determination."  *Umaña-Ramos v.*

*Holder*, 724 F.3d 667, 670 (6th Cir. 2013) (quoting *Hachem v. Holder*, 656 F.3d 430, 437 (6th Cir. 2011)). But to the extent the BIA adopted the IJ's reasoning, we also review the IJ's decision. *Id.* We review questions of law de novo but give "substantial deference . . . to the BIA's interpretation of the INA and accompanying regulations." *Id.* (alteration in original) (quoting *Khlalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009)). We review factual findings under the highly deferential substantial evidence standard. *Id.* The BIA's factual findings "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* (quoting 8 U.S.C. § 1252(b)(4)(B)).

A.

Asylum and withholding of removal claims face similar requirements. For asylum, an alien must show that she is a refugee. 8 U.S.C. § 1158(b)(1)(B)(i). A refugee is someone "who is unable or unwilling to return to . . . [her] country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion[.]" 8 U.S.C. § 1101(a)(42)(A); *Kante v. Holder*, 634 F.3d 321, 325 (6th Cir. 2011). Similarly, for withholding of removal, an alien must show that her "life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion."[2] 8 U.S.C. § 1231(b)(3)(A).

Corea asserts a well-founded fear of future persecution, which she can demonstrate "by showing that she has a genuine fear and that a reasonable person in her circumstances would fear persecution on account of a statutorily protected ground if she returned to her native country."

---

[2] A quick word on Corea's withholding of removal claim. The BIA concluded that because Corea could not establish eligibility for asylum, she also could not establish eligibility for withholding of removal. On appeal, Corea does not treat her withholding of removal claim any differently than her asylum claim. So for the purposes of this appeal, we consider them together.

*Kante*, 634 F.3d at 325. To succeed on this claim, Corea must show a "clear probability" that she will be persecuted on return to Honduras because of her "membership in a particular social group." *Zaldana Menijar v. Lynch*, 812 F.3d 491, 498 (6th Cir. 2015) (quoting 8 U.S.C. § 1231(b)(3)(A)). "A 'particular social group' must meet three criteria: (1) immutability (members must share an immutable characteristic), (2) particularity (the group has discrete and definite boundaries), and (3) social distinction (society actually perceives the purported group as a distinct class of persons)." *Cruz-Guzman v. Barr*, 920 F.3d 1033, 1036 (6th Cir. 2019). In addition, "a social group may not be circularly defined by the fact that it suffers persecution. In other words, the individuals in the group must share a narrowing characteristic other than their risk of being persecuted." *Kante*, 634 F.3d at 327.

Corea proposes three different social groups. She first argues that she demonstrated a well-founded fear of future persecution based on her membership in the social group of "Honduran women unable to leave their relationship[s]." [Petitioner Br. at 17.] This group bears obvious resemblance to a group the BIA had considered cognizable in *Matter of A-R-C-G-*, 26 I. & N. Dec. 388, 392 (B.I.A. 2014)—"married women in Guatemala who are unable to leave their relationship[s]." But while Corea's appeal was pending before the BIA, the Attorney General overruled *A-R-C-G-*. *See Matter of A-B-*, 27 I. & N. Dec. 316, 317 (A.G. 2018). In Corea's appeal, the BIA applied the factors discussed in *A-B-* and concluded that *Matter of A-B-* "foreclose[d]" Corea's proposed social group.

With a new administration comes a new Attorney General and sometimes differing views. On June 21, 2021, the Attorney General vacated *Matter of A-B-* and instructed "immigration judges and the Board [to] follow pre-*A-B-*[] precedent, including *Matter of A-R-C-G-*." *See Matter of A-B-*, 28 I. & N. Dec. 307, 309 (A.G. 2021). Consequently, the BIA's reasoning as to Corea's asylum

claim premised on her membership in the social group of Honduran women unable to leave their relationships has been undercut.

*A-B-* similarly affected other portions of the BIA's analysis of Corea's asylum claim. For example, Corea also argued that she demonstrated a well-founded fear of future persecution based on her membership in two familial social groups: family members of Emilio Sanchez Fonseca, her stepfather, and family members of Carlos Hernandez, the father of her middle child, A. Here, the BIA relied on *A-B-*, at least in part, to determine that Corea's claim failed because she could not establish that her membership in the familial groups "was or would be at least one central reason for any harm from the gangs, or any other group or individuals in Honduras." And later, the BIA relied on *A-B-* as support for its determination that Corea had failed to meet "her burden to establish that she was, or would [be], persecuted by individuals whom the Honduran government is unable or unwilling to control."

Given the BIA's repeated reliance on *A-B-*, briefing on the effect of *A-B-*'s overruling is necessary. We remand to the BIA to reconsider Corea's asylum claim in the first instance, this time under pre-*A-B-* caselaw. *See A-B-*, 28 I. & N. Dec. at 309.

One last matter relating to Corea's asylum claim. On appeal, Corea argues that she is eligible for asylum as a member of the social group of Honduran women viewed as property by the fathers of their children. She acknowledges that she did not present this social group to the IJ or the BIA but argues that, given the ever-changing landscape of immigration law, we should remand the case so that she might assert this new group before the agency. We entrust whether to consider this newly proffered social group to the BIA.

B.

Corea next challenges the denial of her request for a continuance. Before we address her argument, some procedural background helps. Corea never asked the IJ for a continuance so that she might pursue a U visa. Instead, she sought administrative closure, which the IJ denied. In her brief before the BIA, Corea appeared to recognize that the Attorney General's opinion in *Matter of Castro-Tum* foreclosed her request for administrative closure. So she turned her attention to a continuance, asking for one from the BIA, or for the BIA to remand to the IJ to grant a continuance. The BIA denied both requests, concluding that Corea had "not shown 'good cause' for a continuance as she has not established prima facie eligibility for a U visa, a pending application for a collateral matter not within the Immigration Judge's jurisdiction, or established that the collateral matter would materially affect the outcome of the removal proceedings." The BIA continued, "[U]nder the circumstances presented here, because the respondent has not provided persuasive evidence that she is likely to prevail on the pending [U visa petition] or that a delay to allow for the adjudication of the petition is likely to alter the outcome in these proceedings, she has not established that a remand is warranted in this case and her request is denied."

We review the BIA's decision for an abuse of discretion. *See Abu-Khaliel v. Gonzales*, 436 F.3d 627, 634 (6th Cir. 2006) (denial of continuance); *Fang Huang v. Mukasey*, 523 F.3d 640, 655 (6th Cir. 2008) (denial of a motion to remand). "In determining whether the Board abused its discretion, this Court must decide whether the denial was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination." *Abu-Khaliel*, 436 F.3d at 634 (alterations adopted) (quoting *Balani v. I.N.S.*, 669 F.2d 1157, 1161 (6th Cir. 1982)).

"Respondents often request continuances because they are pursuing collateral relief in other forums that may affect the outcome of their removal proceedings." *Matter of L-A-B-R-*, 27 I. & N. Dec. 405, 405 (A.G. 2018). Immigration judges may grant a continuance "for good cause shown." *Id.* (quoting 8 C.F.R. § 1003.29). "[A]s the party seeking the continuance, the alien bears the burden of establishing good cause." *Id.* at 413.

As Corea notes, "[a]ny determination on whether good cause exists for a continuance 'should turn primarily on the likelihood that the collateral relief will be granted and materially affect the outcome of the removal proceedings.'" Petitioner Br. at 28 (quoting *L-A-B-R-*, 27 I. & N. Dec. at 412). So Corea must show a likelihood of success on her U visa petition. To establish prima facie eligibility for a U visa, Corea must make three showings, the first being that she "'suffered substantial physical or mental abuse' as a victim of qualifying criminal activity, as opposed to only minor or incidental harm." *Matter of Sanchez Sosa*, 25 I. & N. Dec. 807, 813 (B.I.A. 2012) (quoting 8 U.S.C. § 1101(a)(15)(U)(i)(I)). "Factors to be considered include the nature of the injury inflicted, the duration of the harm, and the severity of the perpetrator's conduct." *Id.* "Documentary evidence, such as medical reports or psychological evaluations that would be submitted to the DHS to support the petition, should be submitted to establish the extent of any injury." *Id.* If Corea cannot establish this initial step, the inquiry is over. *Id.*

Corea first alleged that she had established prima facie eligibility for a U visa in her motion for administrative closure. But she did not explain how the harm she suffered amounted to the requisite "substantial mental or physical abuse." Nor did she offer any such argument to the BIA. In fact, her brief before the BIA is silent on her prima facie eligibility for a U visa, other than a conclusory assertion that she filed a "prima facie approvable application." Her opening brief to this court on appeal is similarly silent on how her injuries amount to "substantial mental or physical

abuse." Although Corea's reply brief on appeal argues that she has met the required legal standard, we cannot conclude that the BIA abused its discretion by rejecting an argument never presented to it. *Cf. Young Hee Kwak v. Holder*, 607 F.3d 1140, 1144 (6th Cir. 2010) (recognizing that the agency did not abuse its discretion by denying a continuance when the petitioner had failed to "provide any evidence that suggested a likelihood of success" and therefore the agency "had little reason to believe" that the petitioner would obtain a favorable outcome on the pending petition) (quoting *Cika v. Holder*, 344 F. App'x 208, 217 (6th Cir. 2009)).

Even if Corea had established the first step of prima facie eligibility for a U visa, she has not established the third.[3] For the third step, if the alien is inadmissible (like Corea), she must seek a waiver of inadmissibility from the USCIS. *Sanchez Sosa*, 25 I. & N. Dec. at 814. And an IJ "should assess the likelihood that the USCIS will exercise its discretion favorably under the regulatory standard as part of the determination of the prima facie eligibility." *Id.* "[T]he USCIS will only grant the waiver 'in extraordinary circumstances.'" *Id.* (quoting 8 C.F.R. § 212.17(b)(2)).

Corea made no mention of a waiver of inadmissibility when discussing her prima facie eligibility in her motion for administrative closure. She also made no mention of one before the BIA. On appeal, she says that "[h]ad DHS, the IJ, or the BIA believed that Ms. Corea would be ineligible for a waiver of inadmissibility, evidence of eligibility and proof of the pending waiver application could have been provided to the IJ." But it was Corea's burden to supply the necessary information to the IJ. *See Sanchez Sosa*, 25 I. & N. Dec. at 814 (recognizing that "an alien generally should provide the Immigration Judge with copies of [the USCIS] submissions and

---

[3] Corea has met the second step, which asks whether "the alien has relevant information and has been, is being, or will be helpful to authorities investigating it or prosecuting it." *Sanchez Sosa*, 25 I. & N. Dec. at 813. "This requirement may be shown if the alien has obtained [a law enforcement] certification." *Id.* Corea submitted a law enforcement certification to the IJ.

relevant supporting documents, including a waiver of inadmissibility on Form I-192, if applicable"). She failed to meet that burden. Corea therefore has not established that the BIA abused its discretion by denying her request for a continuance or for a remand to the IJ for further consideration of a continuance.[4]

C.

Corea also challenges the denial of her motion for administrative closure. Again, we review for an abuse of discretion. *See Matias-Cifuentes v. Whitaker*, 755 F. App'x 539, 542 (6th Cir. 2018).

"Administrative closure is a device 'created for the convenience of the Immigration and Courts and the Board.'" *Hernandez-Serrano v. Barr*, 981 F.3d 459, 462 (6th Cir. 2020) (quoting *Matter of Avetisyan*, 25 I. & N. Dec. 688, 690 (B.I.A. 2012)). Administrative closure "remove[s] a case from an Immigration Judge's active calendar or from the Board's docket." *Avetisyan*, 25 I. & N. Dec. at 692. In the past, cases that were administratively closed rarely were re-calendared, meaning that the proceedings were essentially closed without a final disposition. *Hernandez-*

---

[4] Recently, in *Asista Immigration Assistance, Inc., v. Johnson*, No. 3:20-cV-00206-JAM, the United States District Court for the District of Connecticut approved a motion to hold the case in abeyance to allow ICE to "continue[] to actively review[] its policies of processing of applications for administrative stays of final orders of removal for individuals with pending U-nonimmigrant status petitions." Respondent Letter Brief, Appellate R. 90, Exhibit A. As part of the order, ICE agreed (with exceptions not relevant here) to do the following for ninety days (ending June 15, 2021): "1) Hold on denying new or pending stay requests for individuals with pending U-nonimmigrant status petitions; 2) Hold on removing any person who has a pending U-nonimmigrant status petition; and 3) Not oppose continuing removal proceedings for any person with a pending U-nonimmigrant status petition." *Id.* The government admits that ICE's temporary policy applies nationwide but nonetheless argues that it does not affect Corea, aside from the second prong. Corea, for her part, says that the order represents a sea change in ICE policy and that we should remand to the IJ for reconsideration of her request for a continuance. We agree with the government that the order gives us no basis to vacate the removal order against Corea and that the only effect the order will have on Corea currently is that ICE could not have removed her before June 15, 2021—a date that has already passed.

*Serrano*, 981 F.3d at 463. In *Castro-Tum*, however, the Attorney General analyzed two regulations that purported to be the source of authority for such closures, 8 C.F.R. §§ 1003.10 and 1003.1(d), and concluded that neither provided "general authority to suspend indefinitely immigration proceedings by administrative closure." 27 I. & N. Dec. at 271, 282–84. Instead, "[i]mmigration judges and the [BIA] may only administratively close a case where a previous regulation or previous judicially approved settlement expressly authorizes such an action." *Id.* at 271.

Corea asks this court to reject *Castro-Tum*'s reasoning and return administrative closure law to its prior status. That we cannot do. This court recently concluded that *Castro-Tum* was right about administrative closure. *See Hernandez-Serrano*, 981 F.3d at 466 ("[W]e agree with the Attorney General that §§ 1003.10 and 1003.1(d) do not delegate to IJs or the Board 'the general authority to suspend indefinitely immigration proceedings by administrative closure.'" (quoting *Castro-Tum*, 27 I. & N. Dec. at 272)). *Castro-Tum*, therefore, is good law, and Corea's arguments to the contrary fail. Because Corea does not contend that she fits within any of the limited exceptions set forth in *Castro-Tum*, the BIA did not err by concluding that *Castro-Tum* barred administrative closure in this case.[5]

---

[5] In *Hernandez-Serrano*, the court did not foreclose the argument that administrative closure might be available when "the mere fact that removal proceedings remain pending before an IJ or the Board would legally bar an alien from obtaining a favorable adjustment of status to which he would be potentially entitled in proceedings before another agency." 981 F.3d at 466–67. Recently, a panel of this court addressed that question and held that IJs and the BIA retain the authority to grant administrative closure in such circumstances, specifically where a noncitizen seeks to apply for an unlawful presence waiver under 8 C.F.R. § 212.7. *See Garcia-DeLeon v. Garland*, -- F.3d --, 2021 WL 2310055, at *4–6 (6th Cir. June 4, 2021). Corea never raised this argument, nor does she assert that her removal proceedings hinder her ability to obtain a U visa. In fact, she has never contested the Attorney General's position that she still could obtain a U visa even if she were removed from the country.

III.  Docket No. 20-3252

Corea's motion for reconsideration focuses on the BIA's decisions regarding a continuance and administrative closure.  For many of the reasons stated above, Corea's arguments regarding her motion for reconsideration fail.  We must still resolve a few additional issues, however.  We do so under an abuse of discretion standard.  *See Allabani v. Gonzales*, 402 F.3d 668, 675 (6th Cir. 2005).  Because the BIA has broad discretion to grant or deny a motion for reconsideration, "a party seeking reconsideration bears a 'heavy burden.'" *Cisse v. Gonzales*, 255 F. App'x 971, 975 (6th Cir. 2007) (quoting *I.N.S. v. Doherty*, 502 U.S. 314, 323 (1992)).

Corea argues that the BIA erred by declining to exercise its authority to reconsider its prior order sua sponte and remand her case to the IJ.  We lack jurisdiction to entertain this argument. *See Barry v. Mukasey*, 524 F.3d 721, 724 (6th Cir. 2008); *Dable v. Barr*, 794 F. App'x 490, 494 (6th Cir. 2019).

Corea also argues that the BIA's original decision contained a material error regarding her request for a continuance.  Specifically, she points out that in its original decision, the BIA said that it agreed with the IJ that Corea had failed to establish prima facie eligibility for a U visa, when, in fact, the IJ had made no such determination.  She says that the BIA brushed away this material error when denying her motion.

Corea is right that the IJ never considered her prima facie eligibility for a U visa.  The BIA acknowledged the error in its order denying reconsideration.  But that error makes no difference for two reasons.  Despite the BIA's erroneous statement in its original order, the BIA reached its own conclusion that "under the circumstances presented here, . . . [Corea] has not provided persuasive evidence that she is likely to prevail on the pending [U visa petition]."  The BIA thus

made its own determination and did not rest entirely on a non-existent IJ decision.[6]  Moreover, as discussed above, Corea has failed to establish prima facie eligibility for a U visa.  As a result, Corea has failed to meet her heavy burden to show that the BIA abused its discretion by denying her motion for reconsideration.  *See Cisse*, 255 F. App'x at 975.

\* \* \*

We GRANT in part and DENY in part Corea's petition in Docket No. 19-3537 and DISMISS in part and DENY in part Corea's petition in Docket No. 20-3252.  We REMAND to the BIA for further proceedings.

---

[6] To the extent Corea argues that the IJ or BIA failed to make any specific factual findings regarding her prima facie eligibility for a U visa, we again note that Corea failed to make any specific arguments regarding the requirements for a prima facie showing of U visa eligibility before either body.